Date signed March 22, 2007



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
at GREENBELT

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Joan C. Mackall, | * | Case No. | 03-11086-TJC |
| | * | Chapter | 11 |
| Debtor. | * | | |
| ************************************ | * | | |
| Joan C. Mackall, | * | | |
| | * | | |
| | * | | |
| Plaintiff and Counter-Defendant, | * | Adv. No. | 06-01155-TJC |
| vs. | * | | |
| Samer Alshantir, | * | | |
| | * | | |
| | * | | |
| Defendant and Counter-Claimant. | * | | |

## MEMORANDUM IN SUPPORT OF ORDER DISMISSING COMPLAINT FOR LACK OF STANDING

Before the Court are cross-motions for summary judgment filed by Plaintiff Joan C. Mackall (the "Plaintiff") and Defendant Samer Alshantir (the "Defendant"). Each party has filed an opposition thereto. After an initial hearing on the motions held on February 6, 2007, the parties filed supplemental briefs on the issue of what constitutes

present equivalent fair value under 11 U.S.C. § 549.  The Court took the matter under advisement.  Without addressing the merits of the motions, the Court sua sponte addresses herein the question of whether the Plaintiff has standing to pursue the claims in the complaint.   For the reasons set forth herein, the Court will dismiss the complaint without prejudice because the Plaintiff lacks standing to bring the claims.

### I. MATERIAL FACTS THAT ARE NOT IN DISPUTE

Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code on January 20, 2003.  Plaintiff's initial plan was confirmed by order dated October 17, 2003.  As described below, Plaintiff's plan has subsequently been modified on several occasions.

On February 9, 2006, Plaintiff initiated this adversary proceeding by filing the complaint.  The pertinent factual allegations in the complaint concern transactions entered into between the Plaintiff and the Defendant in and after September 2004.  At that time, Plaintiff was in default under two deeds of trust encumbering her property known as 1780 Grays Rd., Prince Frederick, Maryland, (the "Property").  In the Plaintiff's main bankruptcy case, the lenders who held deeds of trust against the Property were granted relief from the automatic stay in order to pursue foreclosure sales of the Property.

The Property was advertised for sale at public auction.  Prior to the auction, the Plaintiff and Defendant entered into various agreements and transactional documents that resulted in the foreclosure sale being stopped. The parties dispute the character of the transactions, but do not dispute the factual predicates underlying the transactions.

The Plaintiff deeded the Property to the Defendant.  The Plaintiff and Defendant executed a lease and option agreement, pursuant to which the Plaintiff leased the Property from the Defendant at a rate of $1800 per month. In addition the Plaintiff received an

option to purchase the Property within 12 months for $210,000, or $230,000 if an additional lot on the Property was not transferred.

The parties stipulate that at the time of the transaction, the Property had a fair market value of at least $210,000. The parties also stipulate that, for purposes of summary judgment, the Court should consider that the purchase price paid by the Defendant was at least $153,230.90, consisting of (1) $121,467.54, which was the amount of the liens against the Property at the time of closing; plus (2) $31,763.36, which was the amount the Defendant paid to cure the arrearages on the deed of trust notes to prevent the foreclosure from going forward.[1] The Defendant contends that he should also be credited for paying closing costs of approximately $4,800. The Plaintiff contests that the closing costs paid by the Defendant should be calculated as part of the purchase price.

The Defendant also contends that he gave additional value to the Plaintiff in the form of the twelve-month option to repurchase the property for $210,000, although Defendant does not quantify that value. If the Plaintiff had exercised the option, at closing the Plaintiff would have paid the Defendant $88,532.46 ($210,000 less the liens of $121,467.54) against his original investment of $31,763.36. Other than some hypothetical value that may be attributable to the right to buy the Property at fair market value, one would be hard pressed to determine the value <u>to the Plaintiff</u> of the right to pay the Defendant all of the equity in the Property, as well as returning the $31,763.36 he originally paid to cure the arrearages, for the privilege of buying back her home.[2] In any event, for purposes of this memorandum, these disputes are not relevant.

---

[1] The amount of the purchase price for the Property shown on the settlement statement was $153,230.90.

[2] The Court notes that the receipt of $88,532.46 on an initial investment of $31,763.36 is a return to the Defendant of 178% in twelve months on a fully secured investment.

3

In the complaint, the Plaintiff seeks relief under four counts.  Under count one, as it has evolved,[3] Plaintiff contends that the transaction was not authorized by the Court as required by the Bankruptcy Code.  Plaintiff contends that, pursuant to 11 U.S.C. § 549,[4] the Defendant did not pay "present fair equivalent value" and, therefore, at most the Defendant should only receive a lien on the Property to the extent of the present value he gave[5].  In count two, the Plaintiff alleges that she was defrauded and that the deed to the Defendant should be declared to be a mortgage pursuant to Md. Code Ann., Real Prop. § 7-101. Counts three and four, in which the Plaintiff brought claims of fraud and recession, have been withdrawn by the Plaintiff.

In Defendant's counterclaim, he asserts a claim of fraud against Plaintiff because she made written representations at the time of the transaction to the effect that she was

---

[3] Count one originally asserted a claim that the post-petition sale of the Property violated the automatic stay of Section 362.  Plaintiff refined this argument and narrowed it to a claim under Section 549 at the hearing on summary judgment.

[4] Section 549 provides in relevant part:
>(a)Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
>>(1) that occurs after the commencement of the case; and
>>(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>>(B) that is not authorized under this title or by the court.
>
>***
>
>(c)The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

[5] The Plaintiff does not seriously dispute that the Defendant is a "good faith purchaser without knowledge of the commencement of the case." 11 U.S.C. § 549(c)

4

not the subject of a bankruptcy case. The Defendant contends that if the Plaintiff had not signed the documents containing this representation, he never would have proceeded with the transaction.

In the Plaintiff's main bankruptcy case, Case No. 03-11086, the Plaintiff filed her Amended Fourth Modified Chapter 13 Plan (the "Fourth Plan") on February 21, 2006. The Fourth Plan was approved by order entered on March 9, 2006. The Fourth Plan requires the Plaintiff to continue to make monthly payments to the Chapter 13 trustee, although it modified the amount of those payments. While the Fourth Plan was filed after the Plaintiff filed this adversary proceeding, no mention is made in the Fourth Plan of this adversary proceeding or any potential recovery from this proceeding.

Also in the main bankruptcy case, on August 31, 2006, the Court entered an order dismissing the Chapter 13 case based on the Plaintiff's material default in plan payments. The Plaintiff filed a motion to vacate the dismissal and a motion to modify the plan for the fifth time.  The motion to vacate the dismissal was granted, but the motion to modify the plan was denied.  Throughout these filings, no mention is made of this adversary proceeding or the potential recovery to the estate from this proceeding.

## II.   CONCLUSIONS OF LAW

The Complaint contains no allegations establishing the standing of the Plaintiff to bring an action seeking recovery of property of the estate.  Further, as stated above, the Plaintiff has made no mention of this adversary proceeding in the Fourth Plan or the filings in connection with the potential fifth modified plan, all of which occurred after this adversary proceeding was filed.

Although neither party has addressed the Plaintiff's standing to bring the claims in the complaint, lower federal courts are routinely instructed that federal courts are of limited jurisdiction, and it is incumbent on them to ensure they have subject matter jurisdiction in every case. "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.' " United States v. Hays, 515 U.S. 737, 742 (1995) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-231 (1990) (citations omitted)).

Further, a federal court "will 'raise a lack of subject-matter jurisdiction on its own motion.'" Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) (citing Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702 (1982)). See also, Allstate Inc. v. Adkins, 932 F.2d 963 (4th Cir. 1991) ("It is axiomatic in our legal system, however, that standing concerns must be brought out by a court at any time during a proceeding, for without proper standing there would exist no case or controversy for a court to decide.").

In this case, there is no doubt that the Property was property of the estate at the time of the transactions between the Plaintiff and the Defendant, and that the claims in the complaint, if successful, will generate property of the estate. Section 1327(b) provides that confirmation of the Chapter 13 plan vests all property of the estate in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan." 11 U.S.C. § 1327(b). In this District, the standard confirmation order provides that property of the estate shall not vest in the debtor until the debtor is granted a discharge (upon completion of the plan) or the case is dismissed. See, e.g., Docket No. 49 in Case No. 03-11086

(Initial confirmation order in Plaintiff's main bankruptcy case).[6] Accordingly, at the time of the transactions between the Plaintiff and Defendant, the Property was property of the estate.

Further, there is no doubt that if the sale transaction were to be reversed, the Property would come back into the estate as property of the estate, even if the Plaintiff were allowed to bring the claims on her own behalf. Section 1306 (a)(1) provides that

> (a)    Property of the estate includes, in addition to the property specified in section 541 of this title-
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first .
> . . .

11 U.S.C. 1306(a)(1). See also, 11 U.S.C. 541(a)(3)(property of the estate includes any interest the trustee recovers under, among other sections, Section 550). Because the Property was property of the estate at the time of the transaction and would be property of the estate if the transaction is avoided, the estate undoubtedly has an interest in bringing the complaint. However, nowhere in the complaint are allegations asserted that establish that any recovery would be for the benefit of the estate or its creditors, and not the Plaintiff personally.

Indeed, although the Defendant has not specifically challenged the standing of the Plaintiff to bring the complaint, the inequity of this situation is certainly not lost on him. He contends that, especially because he relied on Plaintiff's written representation that she was not the subject of a bankruptcy case, allowing her to revoke the transaction for

---

[6] Defendant argued at the summary judgment hearing that the Property was no longer property of the estate at the time of the transaction because the secured lenders had obtained relief from stay and a foreclosure sale was two days away. Neither of these events was sufficient to terminate the estate's interest in the Property.

her own benefit is inequitable and unfair. He also contends that the sole beneficiary of the claims raised in the complaint is the Plaintiff herself:

> Moreover, there are no other creditors of the Plaintiff who will benefit from the sale of the Property at a higher price. To the contrary, the only person who will benefit from setting the deed aside and establishing a lien on behalf of the Defendant is the Plaintiff who knowingly and voluntarily participated in the sale to the Defendant. In substance, the Plaintiff will be the sole beneficiary of her own malfeasance.

Defendant and Counter-Plaintiff's Supplemental Memorandum Regarding Fair Equivalent Value at p.4-5. The Plaintiff has neither admitted nor denied that no other creditors will benefit from any recovery. However, as stated above, neither the complaint nor any other filing by the Plaintiff states otherwise or provides any basis upon which even a colorable claim of standing could be asserted.

The issue of whether a Chapter 13 debtor has standing to pursue a Section 549 avoidance action in a Chapter 13 case or other avoidance actions is the subject of considerable controversy. Opinions can readily be found on both sides of the issue. For a thoughtful opinion denying standing to a debtor to bring an avoidance action on behalf of the estate, see Hansen v. Hansen (In re Hansen), 332 B.R. 8 (B.A.P. 10th Cir. 2005). For an equally thoughtful opinion granting standing to a debtor to bring an avoidance action on behalf of the estate, see Houston v. Eiler (In re Cohen), 305 B.R. 886 (B.A.P. 9th Cir. 2004).

In addition, most cases that permit Chapter 13 debtors to bring avoidance actions, rely on the fact that the action must be brought on behalf of the estate for the benefit of

the estate and its creditors.[7] No case of which the Court is aware would allow a debtor to bring a Section 549 action or other avoidance action for her own benefit and not for the benefit of the creditors, especially where the debtor has acted with potential unclean hands.

Accordingly, the Complaint will be dismissed without prejudice for lack of standing. Further, while it seems to the Court to be the far better approach to have a trustee join in a Section 549 complaint, the Court expresses no opinion whether a debtor could bring a Section 549 action on behalf of the estate in the absence of such joinder when allegations concerning benefit to the estate are made in the complaint and any recovery would be turned over to the trustee for administration.

### III. CONCLUSION

For the forgoing reasons, the complaint will be dismissed without prejudice.


CC: Plaintiff
    Plaintiff's Counsel
    Defendant
    Defendant's Counsel
    Chapter 13 Trustee


END OF MEMORANDUM

---

[7] An express statutory exception to this exists in Section 522(h). That section allows a debtor to bring an avoidance action under Section 549, among other provisions, but only to the extent that the debtor could have exempted the property under Section 522(g)(1) and if the trustee does not attempt to avoid the transfer. The incorporation of Section 522(g)(1) limits Section 522(h) to involuntary transfers. Obviously, at least for that reason, Section 522(h) does not apply to this case.